# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jose Monserrato Martinez, Jr., | Case No. 15-cv-2636 (WMW/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Bureau of Prisons, Warden FPC Duluth, and Warden FMC Rochester, | |
| Defendants. | |

Jose Monserrato Martinez, Jr., Reg. No. 13080-030, FMC Rochester, PMB 4000, 2110 Center Street East, Rochester, MN 55903-4000 (pro se Plaintiff); and

Bahram Samie, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendants).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), Defendants' Motion to Dismiss, (ECF No. 20), and Plaintiff's Motion to Reconsider, (ECF No. 29). This action has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that Defendants' motion to dismiss be granted and this matter be dismissed.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On June 3, 2015, Plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Compl., ECF No. 1). The filing contained sparse information, but did note Plaintiff was challenging "medical indifference and related damages." (Compl., at 2).[1] In the "Request for Relief" section, Plaintiff indicates he wants the "Bureau of Prisons (FPC Duluth and FMC Rochester) [to] be found guilty of medical indifference" and for an award of $250,000 in damages. (Compl., at 8).

Plaintiff also sought *in forma pauperis* ("IFP") status. (ECF No. 2). When considering Plaintiff's request for IFP status, the Court noted that "[a] habeas petition . . . is not the proper procedural vehicle through which to bring [medical indifference] claims." (July 27, 2015 Order, at 1, ECF No. 8). The Court noted that "[w]here a litigant improperly brings a conditions-of-confinement claim in a habeas petition, a district court, with the permission of the litigant, may construe the petition as a civil complaint." (July 27, 2015 Order, at 2 (citing *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014)). Plaintiff then filed a letter indicating that he agreed to pursue this matter as a civil suit. (ECF No. 9).

Turning back to the factual underpinning of Plaintiff's claim, attached to Plaintiff's initial filing is a Federal Standard Form 95 Claim for Damage, Injury, or Death. (SF95 Tort Form, ECF No. 1-1, at 1).[2] From the SF95 Form it appears that

---

[1] This Court uses the ECF pagination of the document for clarity given that the document's original pagination appears incorrect or incomplete.
[2] This Court uses the ECF pagination of the document for clarity given that multiple documents are contained within ECF No. 1-1.

Plaintiff submitted a tort claim to the Federal Bureau of Prisons ("BOP") on July 18, 2014 alleging a date of injury of "May-June 2013." (SF95 Tort Form). Plaintiff provides, in full:

> While housed at Duluth FCI Camp, I was given a pair of steel toe boots, which were given to me with full knowledge I am diabetic. I told CO I could not wear steel toes, and asked for something else, which was denied. I was forced to wear the steel toes, which caused blisters and bleeding to my feet on first day. I was denied immediate medical care, and toes and feet became infected. I had to wait four days to be seen by a doctor. I was forced to go to outside hospital for treatment, and now have cronic [sic] problems with my toes and feet, due to the deliberate indifference to this serious medical problem I had experienced. I have been forced to suffer undue pain and suffering.

(SF95 Tort Form). Plaintiff asserts injury to his toes and feet "due to infection which was complicated by diabetes and lack of immediate medical attention." (SF95 Tort Form). Plaintiff claimed $30,000 in injuries. (SF95 Tort Form).

On August 18, 2014, Regional Counsel for the BOP's North Central Regional Office acknowledged receipt of Plaintiff's "administrative claim for damages under provisions of the Federal Tort Claims Act, Title 28 U.S.C. § 1346(b), 2671 *et seq.*, alleging liability of the United States Government." (Aug. 18, 2014 Letter, ECF No. 1-1, at 2). Plaintiff's claim was received on July 28, 2014 and, as noted in the letter, the BOP had six months to make an administrative determination on Plaintiff's claim. (Aug. 18, 2014 Letter). Thus, as the letter states, the BOP had until January 27, 2015 to render a decision. (Aug. 18, 2014 Letter).

On December 17, 2014, the Regional Counsel for the BOP's North Central Regional Office informed Plaintiff via letter that his tort claim had been considered for

3

administrative review. (Dec. 17, 2014 Letter, ECF No. 1-1, at 3). The letter notes that investigation into Plaintiff's claim "did not reveal [he] suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment." (Dec. 17, 2014 Letter). Accordingly, Plaintiff's tort claim was denied. (Dec. 17, 2014 Letter). Plaintiff was mailed this denial letter again on February 26, 2015. (ECF No. 1-1, at 4–5).

Defendants move to dismiss this action without prejudice for lack of jurisdiction and/or failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(1), (6). (ECF No. 20). Given Plaintiff's attachment of an administrative tort claim, Defendants construe Plaintiff's action as a medical malpractice claim under the Federal Tort Claims Act. (Mem. in Supp. of Mot. to Dismiss, at 1, ECF No. 23). Defendants assert that such a medical malpractice claim is statutorily barred for failure to comply with Minnesota statutory requirements. (Mem. in Supp. of Mot. to Dismiss, at 1–2). Specifically, Defendants point to Minnesota Statute § 145.682, which requires an "affidavit of expert review" be served with the summons and complaint. (Mem. in Supp. of Mot. to Dismiss, at 1–2).

In response, Plaintiff filed what was docketed as a Motion to Reconsider. (Mot. to Reconsider, ECF No. 29). In this filing, Plaintiff writes:

> I'm of the understanding that your Court has ordered that I hire or otherwise obtain expert witness [sic] to testify on my behalf in this civil case in which I claim that the Federal Bureau of Prisons was negligent in forcing me to wear composite toe shoes instead of diabetic shoes as is the standard for someone with diabetes and a history of diabetes induced peripheral neuropathy. Furthermore, after ulcers developed on the toes of

4

> both feet, the Bureau of Prisons was deliberately indifferent to my medical condition and suffering.

(Mot. to Reconsider, at 1). Plaintiff continues, noting that he feels his medical records "speak for themselves and can, if read thoroughly, support my claims." (Mot. to Reconsider, at 1). Plaintiff then provides more factual support for his original claim. Plaintiff notes the following:

> On May 31, 2013, I had an appointment with Dr. Rice who examined my feet. After seeing my bloody socks and injured toes, Dr. Rice made the decision to make me wait until the following Monday to be seen at sick-call. On Monday, June 3, 2013, P.A. Hunter examined my feet during the sick call process and voiced her displeasure with the fact that Dr. Rice did not take care of my feet right away. She called Dr. Rice into her office and confronted him, in my presence, as to why he hadn't been more aggressive in treating me when I was seen on Friday. P.A. Hunter had me taken to the hospital right away as my toes were black and very infected. Had Dr. Rice had me treated right away, the damage would have been considerably mitigated per P.A. Hunter.

(Mot. to Reconsider, at 1). Plaintiff then asserts that ulcers have possibilities for recurrence and have, in fact, recurred. (Mot. to Reconsider, at 1). Plaintiff also asserts his care made the possibility of toe or foot amputation "great." (Mot. to Reconsider, at 1). Plaintiff claims he has suffered physically and emotionally due to his injuries. (Mot. to Reconsider, at 1–2). Plaintiff also alleges that, given the fact he was imprisoned in Rochester, Minnesota, the law entitles him to treatment at the "Mayo Clinic, a world-recognized leader in medical treatment and education." (Mot. to Reconsider, at 2). Plaintiff concludes that his medical records "speak for themselves and should satisfy [the] requirements for expert testimony." (Mot. to Reconsider, at 2).

Attached to his Motion to Reconsider, Plaintiff provided ten pages of what appears to be selected portions of his medical records. (ECF No. 30). These records are difficult to parse given their general incompleteness,[3] but do provide additional insight into Plaintiff's claims. On June 7, 2013, Plaintiff was admitted to the hospital. (ECF No. 30, at 2). Plaintiff, presented with right foot infection and had a "history significant for diabetes mellitus type II with associated neuropathy . . . ." (ECF No. 30, at 2). Plaintiff reported receiving a new pair of shoes two weeks prior, with the shoes "rubbing on his toes, particularly his second toes bilaterally." (ECF No. 30, at 2). Plaintiff "then developed an abrasion surrounding the right second toenail about one week ago. Since that time, this toe has become more painful. Two or three days ago he noted redness that streaked up the front of his right foot." (ECF No. 30, at 2). Plaintiff reported that he "presented to the prison doctor for this issue. He was started on a course of metronidazole.[4] Unfortunately, the redness and pain continued to worsen" so he was transferred to a hospital for further evaluation and treatment. (ECF No. 30, at 2). On June 8, 2013, the BOP noted that Plaintiff was treated for "[b]lister and open wounds on multiple toes from composite toe shoes." (ECF No. 30, at 1). It notes Plaintiff "[h]as been getting daily wound care, but can drop down to less if no signs of infection" and that the

---

[3] For example, the Court only received a single page from Plaintiff's June 7, 2013 admission note, (ECF No. 30, at 2); a single page from Plaintiff's discharge summary, (ECF No. 30, at 3); a single page from Plaintiff's June 29, 2013 admission note, (ECF No. 30, at 4), even though it appears to be about four pages in length, (ECF No. 30, at 5); a single page from Plaintiff's July 5, 2013 discharge from the hospital along with the end of a note from a July 1, 2013 encounter, (ECF No. 30, at 6); and various records from BOP medical providers—one from 2013, and two from 2015, (ECF No. 30, at 1, 7–10). All these documents appear to be excerpts from longer records without context.

[4] Metronidazole is used to treat bacterial infections in different areas of the body. *Metronidazole,* PubMed Health, Nat'l Ctr. for Biotechnology Info., *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0001181/ (last visited Aug. 11, 2016).

treatment plan is to "[c]leanse toes/blister and apply [self-adhesive dressings]." (ECF No. 30, at 1).

On June 29, 2013, Plaintiff appears to have been admitted to the hospital again upon complaint of a diabetic foot ulcer of his right second toe. (ECF No. 30, at 4). The note indicates Plaintiff was treated during his previous hospital stay with Ancef[5] without improvement, followed by Unasyn[6] with improving symptoms, and ultimately with Augmentin[7] upon discharge. (ECF No. 30, at 4). Plaintiff reported finishing his Augmentin four days prior, but noticing that "red streaking on his foot was returning and the toe was having some worsening drainage . . . ." (ECF No. 30, at 4). Plaintiff also reported worsening pain in his foot and leg, some myalgias, and some chills. (ECF No. 30, at 4). A medical note from what appears to be June 29, 2013 indicates that Plaintiff's Type 2 diabetes was poorly controlled. (ECF No. 30, at 5). A note from July 1, 2013, indicates that Plaintiff had an ulceration of his right second toe, extending "down around the distal phalanx itself" and "a lot of purulence within that region." (ECF No. 30, at 6). Plaintiff also had "some edema and erythema to the digit itself." (ECF No. 30, at 6). The note also contains the following: "Did discuss A1c with his blood sugar that needs to be under tighter control so that we can have appropriate healing processes. I did discuss with

---

[5] Ancef is the brand name of cefazolin, which is "used to treat bacterial infections in many different parts of the body." *Cefazolin (Injection route),* PubMed Health, Nat'l Ctr. for Biotechnology Info., *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009489/ (last visited Aug. 11, 2016).
[6] Unasyn is a brand name for ampicillin/sulbactam, which is used to treat bacterial infections. *Ampicillin/Sulbactam (By injection),* PubMed Health, Nat'l Ctr. for Biotechnology Info., *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0008988/ (last visited Aug. 11, 2016).
[7] Augmentin is a brand name for amoxicillin and clavulanate combination that is used to treat bacterial infections in many different parts of the body. *Amoxicillin and Clavulanate (Oral route),* PubMed Health, Nat'l Ctr. for Biotechnology Info., *available at*
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0008970/ (last visited Aug. 11, 2016).

high blood sugars it does hinder healing of diabetic foot ulcerations and can set him up for failure." (ECF No. 30, at 6). It appears Plaintiff was seen by BOP medical staff in September and October 2015 for a similar injury. (ECF No. 30, at 7–10).

In response to a reply memorandum submitted by Defendants, Plaintiff again asks the Court to disregard statutory requirements and "consider my plea and make a decision based on the medical records I have provided." (ECF No. 33, at 1). Plaintiff asserts that an "expert witness could not speak any clearer than the medical records I provided." (ECF No. 33, at 1). Plaintiff claims he was "neglected the medical care necessary at the appropriate time" and that, knowing his diabetic status, the "possibilities of [Plaintiff] getting further infection were greater." (ECF No. 33, at 1). Plaintiff asserts he was "knowingly denied . . . the medical attention necessary at the appropriate time according to [his] medical situation." (ECF No. 33, at 2).

## II. ANALYSIS

Plaintiff attached an administrative tort claim to his initial filing, a habeas petition. (ECF Nos. 1, 1-1). Plaintiff also attached the correspondence received from or sent to the BOP's Regional Counsel regarding that tort claim. (ECF No. 1-1). Outside the attached tort form, the habeas petition contained nothing more than the parties' identifying information and several sentences alleging Defendants showed medical indifference. (ECF No. 1, at 2, 8). Moreover, Plaintiff contemporaneously filed several form documents, sparsely completed much like the habeas petition, which assert Defendants are guilty of medical indifference, directing the Court to look at the administrative tort claim attached to the initial filing. (ECF Nos. 3, 4). Given all Plaintiff has done to point

8

the Court towards the administrative tort form, the Court finds it appropriate to interpret his filings as an action arising under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*[8]

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity for tort actions against the United States or its agencies. *Id.* at §§ 1346(b), 2671 *et seq.* Thus, in claims under the FTCA, the United States of America is the proper defendant. *See id.* at §§ 1346(b), 2679(a), 2679(b). Under the FTCA, the "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances," *id.* at § 2674, for a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," *id.* at § 1346(b)(1). Courts apply the "law of the place where the act or omission occurred." *Id.*; *Mandel v. United States*, 793 F.2d 964, 968 (8th Cir. 1986) ("The government's liability in actions brought under the Federal Tort Claims Act is determined in accordance with the law of the place where the act or omission occurred."). Because

---

[8] The Court has also considered interpreting Plaintiff's claim as one of deliberate indifference to medical needs arising under 42 U.S.C. § 1983, particularly given Plaintiff's original phrasing of "medical indifference" when referring to his claim. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Such an interpretation, however, would stretch Plaintiff's pleadings too thin; Plaintiff's pleadings simply do not include the elements of a claim under 42 U.S.C. § 1983. Instead, Plaintiff challenges a particular doctor's negligent acts, alleging those acts fell below the applicable standard of care to which doctors are expected to perform. Such a claim sounds in tort, not constitutional violation. *Id.* at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *see Bender v. Reiger*, 385 F.3d 1133, 1137 (8th Cir. 2004) ("[A]n inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.") (quoting *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990)). Thus, for the reasons in this footnote and the paragraph above describing all Plaintiff has done to point the Court to a tort claim, the Court declines to consider Plaintiff's complaint, which has already been converted from a habeas petition, as falling under § 1983.

Plaintiff alleges the negligent acts occurred in Minnesota, Minnesota law would apply in this case.

Under Minnesota law, tort claimants based on negligent medical care must comply with MINN. STAT. § 145.682, SUBD. 2. Under this statute, a plaintiff

> alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must . . . serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3

unless otherwise provided. MINN. STAT. § 145.682, SUBD. 2; *see Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1165 (8th Cir. 1989) (holding that the applicability MINN. STAT. § 145.682 is conditioned upon a finding that expert testimony is necessary to establish a prima facie case of malpractice). This "affidavit of expert review" must state that:

> (a) the facts of the case have been reviewed . . . with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or (b) the expert review . . . could not reasonably be obtained before the action was commenced because of the applicable statute of limitations.

*Id.* at SUBD. 3.

"The primary purpose of the statute is 'to eliminate nuisance malpractice suits by establishing a process where affidavits of expert review are required to verify the lawsuit's validity.'" *Oslund v. United States*, 701 F. Supp. 710, 713 (D. Minn. 1988) (quoting *Parker v. O'Phelan*, 414 N.W.2d 534, 537 (Minn. Ct. App. 1987)); *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990) (reasoning that

"ordinarily, a malpractice action without supporting expert testimony is frivolous *per se*."). Accordingly, the statute provides for mandatory dismissal with prejudice for failure to comply. MINN. STAT. § 145.682, SUBD. 6(a). "A plaintiff's failure to provide an expert affidavit may be excused only if: (1) expert testimony is not needed to establish negligence; or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits." *Flores v. United States*, 689 F.3d 894, 900 (8th Cir. 2012) (citation omitted). "Minnesota courts require strict compliance with the procedural requirements set forth in section 145.682." *Flores*, 689 F.3d at 900 (citing *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 726 (Minn. 2005)); *see Oslund*, 701 F. Supp. at 714 (finding that "compliance with § 145.682 is necessary in any claim of malpractice under Minnesota law").

Before applying the bar found in MINN. STAT. § 145.682, this Court must first determine "whether an expert witness [is] necessary to establish a prima facie case of malpractice." *Vakil v. Mayo Clinic*, 878 F.2d 238, 239 (8th Cir. 1989) (per curiam). In cases asserting a medical provider was negligent, Minnesota courts require a plaintiff to demonstrate "'(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of plaintiff's injuries.'" *Bellecourt v. United States*, 784 F. Supp. 623, 637–38 (D. Minn. 1992) (quoting *Plutshack v. Univ. of Minnesota Hospitals*, 316 N.W.2d 1, 5 (Minn. 1982)).

11

> Expert testimony is not necessary where the matters to be proved fall within an area of common knowledge and developing lay comprehension of medical techniques and where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence.

*Chizmadia*, 873 F.2d at 1165 (quoting *Hestbeck v. Hennepin Cnty.*, 212 N.W.2d 361, 364 (Minn. 1973)); *Bellecourt*, 784 F. Supp. at 636–37 (quoting *Bauer v. Friedland*, 394 N.W.2d 549, 553 (Minn. Ct. App. 1986)). "Generally, expert testimony is needed to prove a prima facie case of medical malpractice," *Bellecourt*, 784 F. Supp. at 638 (citations omitted), and the cases in which expert testimony is not necessary are "exceptional," *Sorenson*, 457 N.W.2d at 191. Minnesota courts have found such exceptional cases

> where metal clips were left in the body after surgery, where there was a failure to remove a sponge after surgery, where a dentist permitted a grinding disc to slip and cut membranes and tissues at the base of the tongue, where a dentist continued to administer gas as an anesthetic after cyanosis appeared, where ether was administered as an anesthetic after cyanosis appeared as a danger signal, where X-ray burn resulted from the improper administration of X[-]ray, and where a chemical burn from phenol resulted from the improper application of the chemical.

*Miller v. Raaen*, 139 N.W.2d 877, 880 (Minn. 1966) (internal citations omitted). "All of these cases involved situations where there was no doubt about the cause of the result complained of, and the result would not have followed in the absence of a breach of duty, the establishment of which did not involve any scientific knowledge." *Id.*

Plaintiff in this case asserts he was subjected to medical indifference by his doctors, wherein after he was not provided diabetic shoes, he received delayed treatment for foot sores that developed. This delay in treatment fell below the applicable standard

of care, Plaintiff alleges, because given his diabetes the doctors should have known infection would develop and become chronic in nature. Plaintiff asserts the infection was complicated due to his diabetes and the lack of immediate medical attention.

This is the type of claim that requires expert review. Plaintiff asserts he received care that fell below the standard of care recognized by the medical community. The record supplied by Plaintiff points to at least two possible distinct causes for his injuries: delay in medical care and complications with diabetes. The record also shows that Plaintiff poorly managed his diabetes, thereby inhibiting his body's healing processes. The interaction between Plaintiff's diabetes and the alleged delay in care as relate to Plaintiff's deteriorative foot ulcers is a matter that does not fall within "an area of common knowledge and developing lay comprehension of medical techniques." *Chizmadia*, 873 F.2d at 1165 (quoting *Hestbeck*, 212 N.W.2d at 364).

This is not an "exceptional" case where the care deviated so far from the standard that scientific knowledge will not be necessary for resolution. Rather, this is a case where scientific knowledge, not mere lay knowledge, will be required to understand the interplay of Plaintiff's diabetes and his injuries. *See Todd v. Eitel Hosp.*, 237 N.W.2d 357, 361 (Minn. 1975) ("This is distinctly not the kind of case where the negligence 'speaks for itself' without expert medical opinion . . . . Where, as here, the conduct of the physician involves the complexities of pathological diagnosis, we are not persuaded that nonmedically-trained jurors are competent to pass judgment. This is definitely not an area within the common knowledge and experience of lay people."). Therefore, this Court concludes that "an expert witness [is] necessary to establish a prima facie case of

malpractice," *Vakil*, 878 F.2d at 239, thereby triggering the bar found MINN. STAT. § 145.682.

The Court next turns to the second ground for failure to provide an affidavit: excusable neglect. To claim that excusable neglect prevented compliance with the affidavit requirement,

> Minnesota courts require a plaintiff to satisfy four factors: (1) plaintiff has a reasonable case on the merits; (2) plaintiff has a reasonable excuse for his failure to meet the statutory time limits; (3) plaintiff has proceeded with due diligence after notice of statutory time limits; and (4) no substantial prejudice will result to defendant by the extension of time.

*Bellecourt*, 784 F. Supp. at 636–37 (citing *Parker*, 414 N.W.2d at 537). Here, Plaintiff does not have a reasonable case on the merits. Despite the fact that Plaintiff appears to have cherry-picked his medical records when providing them to this Court, the medical records show that Plaintiff's poor management of his diabetes was a factor in his injuries. Moreover, the records show that Plaintiff received medical care when asked, contradicting his claim that a doctor refused any treatment whatsoever for four days. (ECF No. 30, at 2 (Plaintiff reported that he "presented to the prison doctor for this issue. He was started on a course of metronidazole.")). Regarding the second and third factors, Plaintiff has no reasonable excuse. Rather, Plaintiff asserts his medical records speak for themselves to such an extent that an expert witness would be superfluous. Accordingly, Plaintiff has not satisfied the reasonable excuse or due diligence factors of excusable neglect. Finally, this Court finds that, while it is unlikely Defendants would suffer substantial prejudice should delay be granted, the lack of prejudice is not outweighed by the lack of a scintilla of excusable neglect in this case. Absent a reasonable case on the

merits, reasonable excuse, or due diligence, the excusable neglect factors do not weigh in favor of Plaintiff merely because Defendants would face a prejudice that is less than *substantial*. Therefore, the Court concludes that Plaintiff has not shown excusable neglect to forgo the expert affidavit requirement of MINN. STAT. § 145.682.

Because Plaintiff indicates he does not intend to comply with MINN. STAT. § 145.682, the Court recommends dismissal of his claims. The Court, however, "is mindful that malpractice claims, if possible, should be decided on the merits." *Bellecourt*, 784 F. Supp. at 640 (citing *Sorenson*, 457 N.W.2d at 192). Given that Defendants have requested Plaintiff's claims be dismissed *without* prejudice, this Court's finding that delay would not *substantially* prejudice Defendants, and Plaintiff's pro se status, the Court recommends dismissal of Plaintiff's claims be without prejudice. In doing so, Plaintiff is provided the opportunity to rearticulate his claims in a manner that complies with appropriate legal authority. Thus, even though MINN. STAT. § 145.682, SUBD. 6(a), mandates dismissal with prejudice, this Court finds that under the specific context of this case, including Defendants' request for dismissal without prejudice, good cause exists for dismissing this case without prejudice.

[Continued on next page.]

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss, (ECF No. 20), be **GRANTED**.

2. Plaintiff's Motion to Reconsider, (ECF No. 29), be **DENIED**.

3. Plaintiff's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), be **DISMISSED WITHOUT PREJUDICE**.

Date: August 11, 2016                     *s/ Tony N. Leung*
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota

                                          *Martinez v. Bureau of Prisons et al.*
                                          Case No. 15-cv-2636 (WMW/TNL)

### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.